# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.G. (a minor, by and through his parents, HEATHER GRAY and ERYN GRAY), Plaintiff, v. ORCUTT UNION SCHOOL DISTRICT, Defendant. | Case No. CV 21-4267-DMG (JCx) **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [86] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [81]** |

Before the Court are Defendant Orcutt Union School District's ("OUSD") Motion for Summary Judgment ("DMSJ") [Doc. # 86] and Plaintiff H.G.'s Motion for Partial Summary Judgment ("PMSJ") [Doc. # 81]. The motions are fully briefed. [Doc. ## 88 ("PMSJ Opp."), 92 ("DMSJ Opp."), 101 ("DMSJ Reply"), 106 ("PMSJ Reply").] On October 28, 2022, the Court held a hearing on the motions. For the following reasons, the Court **GRANTS** Defendant's MSJ and **DENIES** Plaintiff's MSJ.

# I.
# PROCEDURAL BACKGROUND

On May 21, 2021, Plaintiff filed his original Complaint. [Doc. # 1.] The Complaint alleges violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; California's Unruh Civil Rights Act, Cal. Civ. Code § 51; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. *See id.* Plaintiff seeks injunctive relief, damages, and attorneys' fees. *See id.* ¶ 150. Subsequently, on September 9, 2022, Plaintiff and OUSD filed the instant cross-motions for summary judgment relating to Plaintiff's requested injunctive relief. [Doc. ## 81, 86.]

# II.
# FACTUAL BACKGROUND[1]

Plaintiff H.G. is an 11-year-old boy with autism and attention-deficit/ hyperactivity disorder ("ADHD"). [Doc. ## 89 ("Def.'s Response to PSUF") ¶ 1, 94 ("Pl.'s Response to DSUF") ¶ 1.] These conditions limit Plaintiff's ability to learn and affect his verbal and nonverbal communication and social interaction skills. Def.'s Response to PSUF ¶ 1.

Although Plaintiff lives within the boundaries of OUSD, he primarily attends private school. Pl.'s Response to DSUF ¶ 1. Nonetheless, in 2018, pursuant to its obligations under the Individuals with Disabilities Education Act ("IDEA"), OUSD evaluated Plaintiff and determined that he qualified for special education and related services under the categories of autism and other health impairment for ADHD. *Id*. ¶ 3; Def.'s Response to PSUF ¶ 6. When Plaintiff's parents requested that H.G.'s private school accommodate his

---

[1] The summarized facts are undisputed, unless otherwise stated. When purportedly disputed facts are not in fact controverted by the evidence, the Court cites to them as uncontroverted facts. The Court has reviewed all the parties' evidentiary objections. To the extent the Court does not address any of them, it is because the Court did not rely on the objected-to evidence in reaching its ruling. Any objections to such evidence are **OVERRULED as moot**.

special education needs, the private school refused. Pl.'s Response to DSUF ¶ 8.² In August 2020, the private school denied his re-enrollment. *Id*. ¶ 9.³

      Accordingly, for the 2020–21 school year, Plaintiff's parents approached OUSD and expressed their intention to enroll Plaintiff in a district public school. *Id*. ¶ 11. Pursuant to IDEA, OUSD again evaluated Plaintiff and offered him a free appropriate public education ("FAPE") through an Individual Education Program ("IEP") that provided one-to-one assistance throughout the school day by a behaviorally trained instructional assistant. *Id*. ¶¶ 12–13.⁴ Instead of the behavioral assistant provided by OUSD, however, Plaintiff's parents demanded that H.G.'s privately funded applied behavior analysis ("ABA") therapist accompany him at school throughout the day. *Id*. ¶ 14. But OUSD refused Plaintiff's demands, noting that Plaintiff's ABA provider failed to undergo and successfully complete the specific student behavioral training required for providing in-class services to students within the public school district. *Id*. ¶¶ 26–27.⁵

      Consequently, on March 1, 2022, Plaintiff's parents withdrew H.G. from the OUSD special education program. *Id*. ¶ 18. In accordance with Section 504 of the Rehabilitation

---

² Plaintiff objects to this fact based on lack of foundation and failure to present stated information in a form admissible at trial. OUSD cites to a deposition, however, from Plaintiff's mother confirming the private school denied Plaintiff accommodations. *See* DMSJ, Ex. 2 (excerpts from certified transcript of deposition of Heather Gray) at 8:15–24, 9:19–10:3 [Doc. # 79-2 ("Heather Gray Depo.")]. Because this is information that could be presented in a form admissible at trial, Plaintiff's objections are **OVERRULED**. *See Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.").

³ Plaintiff objects that OUSD's cited evidence does not support this assertion. Plaintiff's mother, however, confirmed this fact in deposition. Heather Gray Depo. at 9:19–10:3. As such, Plaintiff's objection is **OVERRULED**.

⁴ Plaintiff objects to this fact on a variety of grounds, some of which are unclear. Nonetheless, OUSD provides sufficient evidence to support this statement, such as copies of its assessments of Plaintiff and letters confirming its findings. Plaintiff's cited evidence does not challenge this fact. Plaintiff's objections are therefore **OVERRULED**.

⁵ Plaintiff's objects to this fact but does not state the grounds for such objection. The Court **OVERRULES** the objection because Plaintiff provides no evidence disputing this statement.

Act, OUSD offered Plaintiff a plan similar to its IEP, including a one-to-one registered behavior therapist aide trained in ABA techniques and supervised by a board-certified behavior analyst. *Id.* ¶¶ 19–20. Plaintiff's parents again refused OUSD's offer and, on October 20, 2021, they withdrew Plaintiff from the school district. *Id.* ¶¶ 21–22.

## III.
## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

## IV.
## DISCUSSION

The IDEA, Section 504 of the Rehabilitation Act, and Title II of the ADA are three different but overlapping federal statutes that protect children with disabilities from unlawful discrimination. The IDEA requires states "to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017) (quoting 20 U.S.C. § 1412(a)(1)(A)). By law, a FAPE "compromises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *D.D. by and through Ingram v. Los Angeles Unified School District*, 18 F.4th 1043, 1048 (9th Cir. 2021) (citing *Fry*, 137 S. Ct. at 748; 20 U.S.C. §§ 1401(9), (26), (29)).

Claims brought under the IDEA are subject to an "elaborate and highly specific procedural" mechanism to safeguard the educational benefits it provides, which plaintiffs must exhaust before they may bring a civil action for judicial review. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 205 (1982); *see* 20 U.S.C. § 1415(*l*).

By contrast, Title II and Section 504 prohibit any "public entity" or federally funded "program or activity," respectively, from discriminating based on disability. 42 U.S.C. § 12132; 29 U.S.C. § 794. Generally, claims brought under Title II or Section 504 are not subject to the IDEA's exhaustion requirements. *See* 20 U.S.C. § 1415(*l*). A Title II or Section 504 claimant "seeking relief that is also available under [the IDEA]," however, must exhaust their claims "to the same extent as would be required had the action been brought under [the IDEA]". *Id*. § 1415(*l*). Accordingly, a party must first exhaust their Title II and Section 504 claims if they "seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Fry*, 137 S. Ct. at 752.

The resolution of the instant cross-motions for summary judgment turns on this exact issue: whether Plaintiff's complaint concerns the denial of a FAPE, or instead addresses disability-based discrimination. The Supreme Court in *Fry* offered several "clues" to

resolve this question: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id*. at 756. Ultimately, "[w]hat matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id*. at 755. Thus, a party need not exhaust their claim if the gravamen of the complaint seeks "equality of access to public facilities, not adequacy of special education." *Id*. at 756.

Additionally, a recent Ninth Circuit case clarified when a plaintiff must exhaust their claim prior to seeking judicial review. In *D. D. by & through Ingram v. Los Angeles Unified Sch. Dist.*, the Court of Appeals found that a school district's denial of a one-to-one aide to manage the plaintiff student's ADHD and behavioral issues constituted "core components of a FAPE," and thus required plaintiff to exhaust their claim prior to judicial review. 18 F.4th 1043, 1054 (9th Cir. 2021) (*en banc*). In so holding, the Court of Appeals noted that

> [I]t is difficult to picture a child claiming that a public library or municipal theater should have provided him with the accommodation D.D.'s mother repeatedly requested of the District—a one-to-one behavioral aide—so the child could participate in the library's story time or attend a theatrical performance, and even more incongruous to picture [a] school visitor asking the District to provide a personal aide.

*Id*. at 1055 (citation omitted). Similarly, in *L.J. by & through Hudson v. Pittsburg Unified Sch. Dist.*, the Ninth Circuit held that one-on-one direction, specially designed mental health services, and a behavior specialist's extensive clinical interventions constitute special education that falls under the IDEA's purview. 850 F.3d 996, 1004–06 (9th Cir. 2017). Conversely, in *McIntyre v. Eugene Sch. Dist. 4J*, the Ninth Circuit held that the school district's denial of access to "an alternative, quiet location to take exams" and "extra

time to complete exams" did not constitute denial of a FAPE subject to the IDEA's procedural exhaustion because "[t]hese accommodations cannot be construed as 'special education,' because they do not provide 'specially designed *instruction*." 976 F.3d 902, 914 (9th Cir. 2020) (citing 20 U.S.C. § 1401(29)). Lastly, in *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, the Supreme Court held that the types of "medical services" exempt from coverage under the IDEA "referred only to services that must be performed by a physician, and not to school health services." 526 U.S. 66, 73–74 (1999); *see* 20 U.S.C. § 1401(26)(A). As such, services provided by a school nurse "to assist a child with a disability to benefit from special education" fall under the "related services" requirement of the IDEA. 20 U.S.C. § 1401(26)(A); *Cedar Rapids*, 526 U.S. at 74–76.

As a preliminary matter, the Court must first determine whether it has jurisdiction to decide these motions. "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (citations omitted).

Plaintiff argues that he is not required to exhaust his claims prior to seeking judicial review because he raises violations of Title II and Section 504, not denial of a FAPE under the IDEA.[6] Nonetheless, the Court must examine the gravamen of Plaintiff's claims, "setting aside any attempts at artful pleading," to determine whether they amount to a denial of a FAPE, and thus implicate the IDEA's exhaustion requirements. *Fry*, 137 S. Ct. at 755.

Here, the Court concludes that Plaintiff's claims amount to a denial of a FAPE and are therefore subject to the IDEA's exhaustion requirements. The "gravamen" of Plaintiff's claims is that OUSD denied Plaintiff access to his privately funded ABA

---

[6] Plaintiff also brings a state law claim under the Unruh Act, which is entirely derivative of the ADA. *See* Cal. Civ. Code § 51(f); Compl. ¶ 136. The Court therefore encompasses the Unruh Act claim in its discussion.

therapist in the public classroom during school hours. *See* Compl. ¶¶ 120–22. Yet, OUSD's denial of a specific, privately funded one-to-one aide to manage Plaintiff's behavior "are core components of a FAPE, and ones that [Plaintiff] repeatedly asked [OUSD] to include in his IEP." *D.D. by and through Ingram*, 18 F.4th at 1054 (citing *Cedar Rapids*, 526 U.S. at 73); *see* Compl. ¶¶ 11–15. Further, one-on-one direction specifically designed for Plaintiff by a behavioral specialist and administered in a school setting—as OUSD offered—constitutes special education subject to the IDEA's regulations. DMSJ, Ex. 13 (letter from OUSD describing FAPE offer) at 1–3 [Doc. 79-13]; *L.J. by & through Hudson*, 850 F.3d at 1004–06. Plaintiff concedes as much when he states "that he requires his ABA treatment to access *educational* benefit [sic] at all, as without that level of treatment, at the standard he receives currently, he is unable to access his *educational* program." DMSJ Opp. at 3 (emphasis added). In other words, Plaintiff alleges an inadequacy with his special education, not inequality of access to public facilities. *Fry*, 137 S. Ct. at 756.

To evade this outcome, Plaintiff points to the Court's previous order denying OUSD's motion to dismiss for failure to exhaust his claims with regards to accommodating Plaintiff's private ABA therapist at school. DMSJ Opp. at 3–4; *see* Ord. re Def.'s Mot. to Dismiss at 4–6 [Doc. # 26 ("MTD Ord.")]. The standards of review, however, are different for motions to dismiss and summary judgment. At the motion to dismiss stage, after excluding conclusory statements, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*). Conversely, at the summary judgment stage, the opposing party "may not rest upon the mere allegations or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. The opposing party can satisfy its burden by submitting affidavits, depositions, answers to interrogatories, admissions on file, or other written evidence. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(c). Accordingly, Plaintiff's allegation that his privately funded ABA therapist must be "consistently administered across all settings: home, community and school," Compl. ¶ 9,

was sufficient to survive a motion to dismiss because it was a non-conclusory allegation that had to be taken as true. MTD Order at 5. To survive a motion for summary judgment, however, Plaintiff must support this allegation with evidence raising a genuine issue of material fact.

At this later stage, Plaintiff fails to satisfy his evidentiary burden. OUSD offers evidence that suggests Plaintiff's insurance company approved 15 hours per week of ABA therapy funding, even though Plaintiff's ABA provider recommended 30 hours per week. DMSJ, Ex. 15 ("ABA Recommendation & Insurance Funding") at 3–4, 6 [Doc. # 79-15]. Regardless of whether Plaintiff receives 15 or 30 hours of ABA therapy per week, Plaintiff fails to present evidence demonstrating how he allots his ABA therapy such that it is "consistently administered across all settings." Specifically, Plaintiff fails to submit evidence demonstrating instances or specific locations where he receives ABA therapy "across all settings," such as a library's story time, a performance at a public theater, or other public facility within the community. *See D.D. by and through Ingram*, 18 F.4th at 1055. The only such evidence is specifically tied to his educational needs.

As such, Plaintiff fails to demonstrate that his claim seeks relief apart from denial of a FAPE because there is no evidence Plaintiff receives ABA therapy outside the school setting. By extension, if there is no dispute of fact about H.G.'s qualification for protections under the ADA and Rehabilitation Act, PSMJ at 13, that OUSD denied his requested accommodation, *id.* at 17, or that OUSD did not assess whether it could "reasonably accommodate" his request, *id.*, Plaintiff's motion for summary judgment fails because he did not exhaust his claims.

Moreover, the Ninth Circuit issued its decision in *D.D. by and through Ingram* after the parties filed their briefs for the motion to dismiss. There, the Court of Appeals held that the denial of a one-to-one aide and other supportive services to manage the behavior of a student with ADHD in school "are core components of a FAPE." 18 F.4th at 1054. Plaintiff makes no attempt to distinguish his case from *D.D. by and through Ingram*, nor

does he otherwise address this binding precedent in his Motion or Opposition to OUSD's MSJ.

Plaintiff further tries to avoid the IDEA's exhaustion requirement by artfully pleading that his ABA therapy constitutes medical services exempt from the IDEA's coverage. *See generally* Compl.; PSMJ at 13–16. Plaintiff offers no evidence, however, that a licensed physician administers his private ABA therapy. *See Cedar Rapids*, 526 U.S. at 73–74. Rather, the ABA therapist is necessary for Plaintiff to "access his educational program." DMSJ Opp. at 3. Because Plaintiff's ABA therapist "assist[s] a child with a disability to benefit from special education," it falls under the "related services" requirement of the IDEA, and thus requires exhaustion. 20 U.S.C. § 1401(26)(A); *Cedar Rapids*, 526 U.S. at 74–76.

## V. CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff's claims for injunctive relief, and Plaintiff's partial motion for summary judgment is **DENIED**. By December 14, 2022, the parties shall meet and confer and file a joint status report with proposed dates and deadlines for the resolution of any remaining claim.

**IT IS SO ORDERED.**

DATED: November 30, 2022

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE